Filed 8/19/22  Michelle A. v. Superior Court CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MICHELLE A.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Real Party in Interest. | B313452<br>(Los Angeles County Super. Ct. No. 19CCJP08094A-B) |

ORIGINAL PROCEEDINGS in mandate. Daniel Zeke Zeidler, Judge. Petition denied.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Dawyn R. Harrison, Acting County Counsel, and Kim Nemoy, Assistant County Counsel, for Real Party in Interest.

* * * * * *

Michelle A. (mother) petitions for extraordinary relief pursuant to California Rules of Court, rule 8.452. She seeks review of the juvenile court's order terminating her reunification services at the 18-month review hearing. She argues that the order is defective because the juvenile court did not comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.) (Welf. & Inst. Code, § 224.2, subd. (b)). Although the juvenile court and Department may have committed error under ICWA, their noncompliance was harmless because there is no "reason to believe" that the further inquiry mother identifies would lead to a different result. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779 (*Dezi C.*).) We deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Family

Mother has two children with her estranged husband Henry A. (father)—Travis A. (born August 2007), and Ethan A. (born April 2010).

## II.    The Dependency Proceedings, Generally

In November 2019, mother had allowed the maternal grandparents to have custody of Travis and Ethan.  Father was living separately in Nevada.  When mother came to visit the kids, she left methamphetamine and a "meth pipe" at their house and within their reach.  By that time, mother and father had been using methamphetamine for more than 20 years.

On December 19, 2019, the Los Angeles Department of Children and Family Services (the Department) filed a petition requesting the juvenile court exert dependency jurisdiction over Travis and Ethan based on the detrimental home environment and mother's substance abuse.

At the jurisdictional hearing in February 2020, the juvenile court sustained all of the allegations pursuant to Welfare and Institutions Code, section 300, subdivision (b)(1),[1] removed the children from mother as well as nonoffending father, and ordered the Department to provide both parents with reunification services.

After receiving reunification services, the juvenile court at the 18-month review hearing in June 2021 found that mother's progress with her case plan was not "substantial" and terminated her reunification services.  The court continued father's reunification services and set the matter for a section 366.25 review hearing on November 30, 2021.  On our own motion (Evid. Code, §§ 452, subd. (d), 459, subd. (a)), we take judicial notice of the juvenile court's November 30, 2021, and July 12, 2022 minute orders, terminating reunification services for father, and ordering a permanency planning hearing (§ 366.26) on October 13, 2022.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

### III. ICWA-related facts

At the outset of the proceedings in juvenile court, mother and father could not be located, and maternal grandmother and her husband—with whom the children were living at the time—told the Department that the children had no known Indian ancestry in their families. After mother and father were subsequently located, both they each filled out written ICWA-020 forms attesting that each had "no Indian ancestry as far as [they knew]." At the detention hearing, the juvenile court asked the maternal grandmother if she had Indian heritage; she reported she had none.[2]

Based on this inquiry, the juvenile court expressly found that it had no reason to believe that the children were "Indian children."

### IV. Appeal

Mother filed an appeal from the order terminating her reunification services in June 2021. This was premature because the juvenile court had yet to set a permanency planning hearing. The juvenile court has since scheduled such a hearing, which triggered mother's entitlement to petition for extraordinary relief. We construe mother's appeal as a petition for extraordinary relief pursuant to California Rules of Court, rule 8.452 and consider its merits.

### V. Postfiling events

While this proceeding has been pending, the juvenile court ordered the Department to conduct further inquiries into the Indian heritage of Travis and Ethan, and on the basis of those

---

[2] Although the maternal stepgrandfather reported some Indian heritage, he is not biologically related to the children at issue in this case.

4

inquiries turning up no further information, made express findings that there was no reason to believe that either child was an "Indian child." The Department asks us to take judicial notice of these proceedings in deciding the pending matter. We decline to do so (and concomitantly deny the Department's motion to dismiss) because we can resolve this matter without resort to this additional information; we therefore have no occasion to take a position on the propriety of doing so.

## DISCUSSION

Mother argues that the order terminating her reunification services must be reversed because the Department failed to discharge their initial inquiry duties under ICWA and related California law to ask "extended family members" and "others who have an interest in the [children]" whether the children may be Indian children and thus entitled to the special protections afforded by ICWA. (§ 224.2, subds. (b) & (c).) The Department does not dispute that there were extended family members and nonrelatives involved in the children's lives that it failed to question. Because there is no question that the Department erred in conducting its initial inquiry, our role in determining whether substantial evidence supports the juvenile court's ICWA findings turn on whether those errors are harmless. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740, 742 (*Benjamin M.*), citing Cal. Const., art VI, § 13.)

## I. Governing Law

ICWA was enacted to curtail "the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) To that end, under the ICWA and the corresponding statutes the

5

California legislature enacted to implement it (§§ 224 -224.6), the juvenile court and the Department have duties aimed at assessing whether a child in a dependency action is an "Indian child." (§§ 224.2, 224.3, added by Stats. 2018, ch. 833, §§ 5, 7.) An "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].) By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry, or 'blood quantum.'" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), quoting 81 Fed.Reg. 38801-38802 (June 14, 2016).)

Under ICWA as amended, the Department and juvenile court have "three distinct duties." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*) [noting amendment's creation of three duties]; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884 [same].) Only the first duty is at issue here: The initial "duty" of the Department and the juvenile court is "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty by "asking" family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) This includes inquiring of not only the child's parents, but also others, including but not limited to, "extended family members." (*Ibid.*) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant" "present" "whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).)

Should an appellate court conclude that the juvenile court did not comply with its duty of initial inquiry under ICWA, the

6

court's next task is to evaluate whether its noncompliance was prejudicial. (*Benjamin M., supra*, 70 Cal.App.5th at pp. 740, 742.) In *Dezi C.*, we recently held that a deficiency in the discharge of ICWA's initial duty of inquiry is prejudicial only if the juvenile court record or evidence proffered by the appealing party on appeal indicates "a reason to believe" that the child may be an Indian child. (*Dezi C., supra*, 79 Cal.App.5th at p. 779.) For example, a reviewing court would have "reason to believe" the Department's error was prejudicial if the record indicates that someone reported possible American Indian heritage and the Department never followed up on that information; if the record indicates that the Department never inquired into one of the biological parents' heritage at all (e.g., *Benjamin M.*, at p. 740); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of "no heritage" may not be fully informed (e.g., *In re A.C.* (2022) 75 Cal.App.5th 1009, 1015-1016 (*A.C. 2022*)).

## II. Analysis

The record in this case does not provide a "reason to believe" that Travis and Ethan are Indian children. Mother, father, and the maternal grandmother each unequivocally denied that they had any Indian heritage. These denials came from the people most likely to know the ancestry of the children—namely, their biological parents and their caregiver. Mother points to nothing else in the juvenile court's record indicating that there is any reason to believe that she, father, or either child themselves had any Indian heritage. And mother makes no proffer of additional evidence that would point to a reason to believe that either child has any such heritage. As such, substantial evidence

7

supports the juvenile court's ruling terminating mother's parental rights.

Resisting this conclusion, mother argues that the Department's failure to ask the paternal grandfather about his heritage and to ask the maternal grandmother about the heritage of her former husband amounts to reversible error. We reject this argument because mother offers no explanation as to how either of the two individuals mother identifies for the first time on appeal had any information as to the children's ancestry that would contradict or supplement the information provided by mother, father, and the maternal grandmother. Nor does the record reveal any reason to believe that those individuals would have such information. Mother implies that the information that these individuals would relay in interviews was "readily available," and hence constitutes prejudice under the test articulated in *Benjamin M.* (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509-510), but we have rejected *Benjamin*'s approach in *Dezi C.* (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 785-786.)

Because neither the record nor any evidence proffered by mother creates a reason to believe the children may be Indian children, mother has not carried her burden.

**DISPOSITION**

The petition for extraordinary relief is denied.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ